# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TAYR KILAAB AL GHASHIYAH
(KHAN),

               Plaintiff,

v.

CATHY JESS, GARY BOUGHTON,
M. KARTMAN, JAMES
SCHWOCHORT, YANA PUSICH,
ELLEN RAY, WILLIAM BROWN, A.
BUSS, T. FREDLUND, MS.
WASHETAS, J. BELOUNGY, MS.
KENNEDY, MR. THOMAS, NEVIN
WEBSTER, V. REISEN, TONIA
MOON, MS. GYR, JASON JACKSON,
JAILOR LEFFLER, JAILOR MORRIS,
JAILOR HULCE, JAILOR
MCDANIEL, JANE DOE, and
DEPARTMENT OF CORRECTIONS ,

               Defendants.

Case No. 21-CV-1479-JPS

**ORDER**

On December 29, 2021, various defendants removed this case from Kenosha County Circuit Court pursuant to 28 U.S.C. §§ 1441, 1446. ECF No. 1. Pending before the Court is Defendants' amended motion to dismiss various claims, ECF No. 23, Plaintiff's request for sanctions against defense counsel, ECF No. 25, Plaintiff's motion to appoint counsel, ECF No. 31, and Plaintiff's motion for an order to substitute judges, ECF No. 32.

Defendants seeks to dismiss various claims from this action. The Court first provides a brief overview of the relevant facts, the relevant legal standard, and then analyzes each argument in turn. As described below,

the Court grants Defendants' motion to dismiss various claims and denies Plaintiff's motions for sanctions, counsel, and to substitute.

## 1. RELEVANT FACTS

Plaintiff's complaint is thirty-nine (39) pages long, names fifty-nine (59) defendants, and covers incidents occurring over a period of years. ECF No. 1-1. The Court previously dismissed various defendants for the failure to serve them, and twenty-three defendants remain. *See* ECF No. 29. As such, the Court will briefly summarize the relevant facts, only as needed to address the pending motion to dismiss.

Plaintiff alleges that in 1988, he legally changed his name to Tayr Kilaab al Ghashiyah ("Bird dog the Over-whelming event").[1] *Id.* ¶ 34. Since that time, he has maintained that he practices as a Muslim under Islam beliefs. *Id.* In 2001, Plaintiff legally changed his name within the Brown County Judicial System from John Casteel to Tayr Kilaab al Ghashiyah. *Id.* ¶ 35. Plaintiff sued the Department of Corrections ("DOC") and multiple employees for refusing to allow him to use only his legal name at several different institutions over a span of eleven years. *Id.* He describes that the DOC prohibited him from using his new name initially because he was only permitted to use the name that appeared on his judgment of conviction. *Id.* ¶ 36. At some point, the DOC "reversed course" and began permitting him to use his new name as long as he referred to the former name by using "Casteel" and his DOC number on forms. *Id.* ¶ 37.

In 2005, the DOC reported to a federal court that the DOC would permit Plaintiff to use his full legal name without reference to "Casteel" for

---

[1]For purposes of a motion to dismiss, Plaintiff's allegations are all taken as true.

mail, visits, and business purposes, including any notary and financial matters. *Id.* ¶ 38. On April 18, 2005, Pamela S. Fuller issued a memorandum to all prisoner departments to permit Plaintiff to use his legal name without reference to his former name. *Id.* ¶ 39. Plaintiff was allowed to use his new legal name until January 17, 2007 when he was transferred to the Wisconsin Secure Program Facility. *Id.* ¶¶ 40, 41.

On February 22, 2007, Diane Alderson issued a memorandum stating, "Effective 2/22/2007, per Department of Justice (DOJ) you are allowed to use only your legally changed name along with your DOC number, on any mail going in or out of WSPF." Plaintiff was required to use his incarcerated name, along with his legally changed name, for correspondence within the institution. *Id.* ¶ 43. Plaintiff provided Defendants with constructive notice that the dual name policy violated his federal and state law rights. *Id.* ¶ 44.

Plaintiff alleges all Defendants knew or should have known based on a 1995 decision, *Malik v. Brown*, 71 F.3d 724 (9th Cir. 1995), that in states where incarcerated persons are permitted to change their name legally, prison employees are generally required to recognize only the legal changed name. *Id.* ¶ 47. Plaintiff alleges various legal conclusions that Defendants violated his rights, including his liberty interests under the Substantive Due Process Clause; that Defendants failed to perform their mandatory duties under Wis. Stat. §§ 301.04, 302.04, 302.08 and the "original Wisconsin constitution;" and that Defendants prohibited his "attempts to process inmate grievances and freedom to exercise individual religious tenets and beliefs at all times relevant to this complaint . . . in violation of the due process clause of the Fifth Amendment and Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution." *Id.* ¶¶ 49–53.

Plaintiff then describes numerous alleged incidents from 2007 – 2018 during which staff did not process his disbursement forms, mail, library material requests, interview request forms, notary request, and complaints because he did not include his dual name on the documents. *Id.* ¶¶ 60–185. The Court will not elaborate on each instance, however, because as discussed below, the majority of these claims are barred by the statute of limitations.

## 2    LEGAL STANDARD – MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal citations and quotations omitted).

## 3. ANALYSIS – MOTION TO DISMISS

Specifically, Defendants seek dismissal of the following claims: all claims against the DOC; federal constitutional claims from before November 9, 2015 and from April 5, 2018 – November 9, 2018; all Religious Freedom Act ("RFRA") or Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims; any State constitutional claims; any State statutory claims; all criminal conspiracy claims; Plaintiff's grievance claims; and claims that rely solely on supervisor liability. ECF No. 24 at 1–2. The Court analyzes each argument separately below.

### 3.1 Federal Constitutional Claims – Statute of Limitations

Plaintiff's complaint was filed on November 9, 2021. ECF No. 1-1. The allegations in Plaintiff's complaint stem from incidents occurring from 2007 through 2018. *See* ECF No. 1-1. Defendants argue that all of the 42 U.S.C. § 1983 claims from before November 9, 2015 and from April 5, 2018 through November 9, 2018 should be dismissed on statute of limitations grounds. ECF No. 24 at 9. Plaintiff first argues that a tolling provision that was in effect in 1985, the year of his conviction, expands his statute of limitations to eleven years. ECF No. 25 at 3. Alternatively, Plaintiff argues his claims are not barred by the statute of limitations because of the "continuing violation" theory. *Id*. at 4. Plaintiff cites to *Turley v. Rednour,* 729 F.3d 645 (7th Cir. 2013), in support of his argument that his cause of action accrues from the date of the last incidence of that violation. Because Defendants had not discussed the continuing violating theory, the Court ordered supplemental briefing on this issue. *See* ECF No. 29.

The Court begins its discussion with an overview of § 1983 statute of limitations and what law applies with respect to tolling and dates of accrual. Actions brought under § 1983 which accrued prior to April 5, 2018, have a six-year statute of limitations in Wisconsin, and actions which accrued after April 5, 2018 have a three-year statute of limitations in Wisconsin. *Huber v. Anderson*, 909 F.3d 201, 207 (7th Cir. 2018) (citing 2017 Wis. Act 235 (eff. Apr. 5, 2018)) (reducing applicable statute of limitations from six to three years).

To properly apply either the applicable six- or three-year statute of limitation, however, the Court must first know the date a claim accrued. As identified above, the statute of limitations for suits under § 1983 is supplied by state law—not only the limitations period but also the tolling rules. *Heard v. Sheahan*, 253 F.3d 316, 317 (7th Cir. 2001) (citing *Wilson v. Garcia*, 471 U.S. 261, 275 (1985); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975)). "Tolling interrupts the statute of limitations after it has begun to run, but does not determine when it begins to run; that question is the question of accrual, [citation] and in section 1983 suits as in other suits under federal law the answer is furnished by federal common law rather than by state law." *Heard,* 253 F.3d at 317–18. "Under those common-law tort principles, claims accrue when a plaintiff has a complete and present cause of action." *Savory v. Cannon*, 947 F.3d 409, 414 (7th Cir. 2020). The Seventh Circuit has clarified that the continuing violation doctrine is a doctrine governing accrual. *Heard*, 253 F.3d at 319 ("But the usual and it seems to us the correct characterization of the doctrine of continuing violation is that it is a doctrine governing accrual.").

As such, the first question before the Court is whether the continuing violation theory applies to this case. Plaintiff cites to *Turley v. Rednour,* 729

F.3d 645 (7th Cir. 2013), in support of his argument that his cause of action accrues from the date of the last incidence of that violation. *Turley* provides that "[f]or continuing Eighth Amendment violations, the [applicable] period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first." *Id.* at 651. Although Plaintiff's argument is somewhat unclear, the Court interprets Plaintiff's reasoning to suggest that all of the claims in his suit are timely because the date of the last incidence of Defendants refusing to recognize his religious name fell within the statute of limitations. Defendants disagree that the continuing violation theory applies because Plaintiff's claims are discrete acts, each of which is independently actionable. ECF No. 30 at 5. Defendants rely on *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010), and *Limestone Development Corp. v. Village of Lemont, Illinois*, 520 F.3d 797, 801 (7th Cir. 2008), in support of their argument. The Court discusses these three cases in turn.

In *Limestone*, the Seventh Circuit explained that the continuing violation doctrine is misnamed and stated it is a "doctrine not about a continuing, but about a cumulative, violation." 520 F.3d at 801. The court described the doctrine as one "to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." The court provided examples where the continuing violation would apply, such as in workplace harassment (on the grounds of sex where a coworker's offensive words or action may be too trivial to count as actional harassment, but that may eventually reach that level if they continue) and RICO cases (since a single course of racketeering activity requires at least two predicate acts and some temporal continuity). *Id.* at 801–02. The court distinguished these examples and found that the continuing doctrine did not apply where

there was a well-established pattern of trying to force out Limestone years before the later predicate act. *Id.* at 802. The Court reasoned that a "'plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period.'" *Id.* (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997)).

Similarly, in *Kovacs,* the Seventh Circuit found the continuing violation theory did not apply. 614 F.3d at 676. There, the IRS attempted to collect taxes from Kovacs three times, each time in error. *Id.* The court emphasized that the theory does not apply to "'a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.'" *Id.* (quoting *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005)). The court reasoned that "[b]ecause the record supports that each of these acts constituted a separate violation of the discharge injunction, Kovacs need not rely on the continuing violation doctrine to recover damages for the IRS's violation of the discharge injunction." *Id.*

In contrast, in *Turley,* the Seventh Circuit found that the plaintiff's Eighth Amendment and conspiracy claims related to repeated and regularly imposed lockdowns concerned continuing actions. 729 F.3d at 651. The court reasoned that "prison officials repeatedly and regularly imposed lockdown for improper purposes, and with each continuing day and period of lockdown, [the plaintiff's] injuries increased." The court found that the statute of limitations accordingly began running from the last date of lockdown or the last day of confinement in a tiny cell. *Id.* The court also reasoned that the plaintiff's claims could have been tolled under the cumulative approach to the continuing violation, as described in

*National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), because the case focused on the "cumulative impact of numerous imposed lockdowns." *Id.*

Here, the Court finds that the continuing violation doctrine does not apply to Plaintiff's federal constitutional claims. Plaintiff alleges that Defendants violated the First Amendment establishment clause, the Fourteenth Amendment equal protection clause, and his right to access the courts each time they refused to process something due to it not including the name "John Casteel." ECF No. 1-1 ¶¶ 24, 27. He alleges that Defendants' actions interfered with his ability to file grievances and civil ligation and that Defendants' actions were discriminatory compared to the treatment of similarly situated individuals. *Id.* ¶ 25. The Court agrees with Defendants that this case is comparable to *Limestone.* Although there was a pattern of Defendants not allowing Plaintiff to use his legal name, Plaintiff cannot use an independent predicate to "act as a bootstrap to recover for injuries caused by earlier predicate acts that took place outside the limitations period. *Limestone,* 520 F.3d at 802. Plaintiff's claims did not require cumulation for him to bring a lawsuit. Plaintiff believed he was being untreated unfairly regarding the use of his legal name for a long time; he had not need to wait to file suit. As such, the Court does not find that the continuing violation doctrine of accrual applies to Plaintiff's claims.

Next, the Court disposes of Plaintiff's argument regarding tolling of the statute of limitations. Plaintiff argues that a tolling provision that was in effect in 1985, the year of his conviction, expands his statute of limitations to eleven years. Courts apply the statute of limitations law that was in effect as of the date of the events giving rise to the lawsuit—not the date of Plaintiff's conviction. *See D'acquisto v. Love,* No. 20-C-1034, 2020 WL

5982895, at *1 (E.D. Wis. Oct. 8, 2020) (citing *Gutter v. Seamandel*, 308 N.W.2d 403 (Wis. 1981)). Contrary to Plaintiff's argument, "Wisconsin does not toll its limitations period for the time in which a person is incarcerated." *Maddox v. Berge*, 473 F. Supp. 2d 888, 894 (W.D. Wis. 2007) (citing Wis. Stat. § 893.16); *Storm v. Legion Ins. Co.*, 665 N.W.2d 353, 367 n.24 (Wis. 2003) ("Imprisonment was removed as a disability under § 893.16 in 1998."). *House v. Warmington*, No. 16-CV-02-PP, 2016 WL 410004, at *2 (E.D. Wis. Feb. 2, 2016).

Here, Plaintiff's earliest claims accrued in 2007, years after Wisconsin removed imprisonment as a disability for the purposes of tolling the statute of limitations. As such, the law that was in effect as of the date of the events giving rise to Plaintiff's claim did not allow for tolling of the statute of limitations as a result of Plaintiff's imprisonment. Although Wisconsin law does currently allow for tolling based on mental disabilities, *see* Wis. Stat. § 893.16, nothing in the record indicates that this tolling provision applies.

In sum, the Court finds that the continuing violation doctrine does not apply to Plaintiff's claim and the date of accrual is therefore the date of the events giving rise to each claim. The Court also finds that no tolling provisions apply to extend the date of accrual. As such, the Court agrees with Defendants and finds that Plaintiff's complaint is untimely with respect to all the federal constitutional claims which allegedly occurred prior to November 9, 2015 (applying the six-year statute of limitations). Additionally, the Court finds the complaint to be untimely with respect to all the federal constitutional claims which allegedly occurred from April 5, 2018 (the date the three-year statute of limitations went into effect) through November 9, 2018. Consequently, the only remaining federal constitutional

claims that may proceed are those that took place between November 9, 2015 and April 4, 2018.

### 3.2    RFRA and RLUIPA Claims

Defendants next argue that any RFRA or RLUIPA claims should be dismissed. ECF No. 24 at 10. Defendants assert that the RFRA claim must be dismissed because RFRA has been held unconstitutional as applied to the states. *Id.* Defendants contend that the RLUIPA claim must be dismissed because Plaintiff is limited to declaratory and injunctive relief, and that his claim is now moot since Plaintiff is no longer incarcerated. *Id.*

As to Defendants' RFRA argument, the Court agrees. In *City of Boerne v. Flores*, 521 U.S. 507, 511 (1997), the United States Supreme Court held that Congress exceeded its legislative authority under section 5 of the Fourteenth Amendment when it applied RFRA to the states. The Court therefore held that RFRA was unconstitutional as applied to state laws. *See id.* In *Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020), the Seventh Circuit reiterated that "RFRA could not be applied to the states." *Id.* at 766. Courts have found that that RFRA claims against state actors are similarly not cognizable. *See, e.g., Braun v. Abele,* No. 15-CV-252-JPS, 2015 WL 3904960, at *5 (E.D. Wis. June 25, 2015) ("Thus, actions against state governments, state actors, etc., are not cognizable under the RFRA."). As such, the Court will grant Defendants' motion to dismiss as to the RFRA claim.

As to the RLUIPA claim, the Court again agrees with Defendants and will dismiss this claim. RLUIPA permits only declaratory or injunctive relief. *See* 42 U.S.C. § 2000cc-2(f). Thus, a claim under RLUIPA becomes moot when a realistic possibility of future violations no longer remains. *Maddox v. Love*, 655 F.3d 709, 716–17 (7th Cir. 2011). A transfer from the

complained-about prison generally moots equitable and declaratory claims. *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009) (citing *Young v. Lane*, 922 F.2d 370, 373 (7th Cir. 1991)). Further, the Prison Litigation Reform Act applies to claims under RLUIPA. 42 U.S.C. § 2000cc-2(e). Therefore, prospective relief for unconstitutional prison conditions must be narrow, extending no further than necessary to correct the violation. *See* 18 U.S.C. § 3626(a)(1)(A); *Rasho v. Jeffreys*, 22 F.4th 703, 711 (7th Cir. 2022).

Here, Plaintiff argues that although he is no longer incarcerated, his RLUIPA claim is not moot because he is still a supervised individual and must only use his legal name while under state control. ECF No. 25 at 8. The Court disagrees. RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a). Courts have found that parolees do not meet the definition of "residing in" or being "confined to" any "institution." *See, e.g.*, *VanGenderen v. Artis*, No. 19-C-325, 2019 WL 1558494, at *2 (E.D. Wis. Apr. 10, 2019); *Belton v. Betzhold*, No. 12-CV-0053, 2012 WL 6094461, at *1 (E.D. Wis. Dec. 7, 2012). The Court agrees with this reasoning. As such, because Plaintiff is currently out of custody, the Court finds that injunctive and declaratory relief are no longer available to Plaintiff, and any such claim is accordingly moot. The Court grants Defendants' motion to dismiss any RLUIPA claim.

### 3.3    State Constitutional Claims

Defendants further argue that any State constitutional claims should be dismissed because the Wisconsin Constitution does not authorize suits for money damages except in a takings claim. ECF No. 24 at 11. As far as the Court can glean from Plaintiff's lengthy response, he has not responded to this argument and therefore concedes it. *See Wojtas,* 477 F.3d at 926.

Even if Plaintiff had not conceded the issue, the Court agrees with Defendants and will grant their motion to dismiss on this claim. "The state constitution does not authorize suits for money damages except in the context of a takings claim." *Goodvine v. Swiekatowski*, 594 F. Supp. 2d 1049, 1054 (W.D. Wis. 2009) (citing *W.H. Pugh Coal Co. v. State*, 460 N.W.2d 787, 792–93 (Wis. 1990) (holding that plaintiff could sue state for money damages arising from an unconstitutional taking of property because article I, section 13 of the Wisconsin Constitution requires that state provide "just compensation" when property is taken); *Jackson v. Gerl*, No. 07-CV-656-BBC, 2008 WL 753919, at *1 (W.D. Wis. Mar. 19, 2008) ("Other than one very limited exception inapplicable to this case, I am not aware of any state law provision that allows an individual to sue state officials for money damages arising from a violation of the Wisconsin Constitution.").

To the extent Plaintiff seeks injunctive relief, that request would be moot as Plaintiff is no longer in custody. As such, the Court will grant Defendants' motion to dismiss on this claim and dismiss all State constitutional claims.

### 3.4    State Statutory Claims

Defendants also argue that any State statutory claims must be dismissed because Plaintiff has never filed a notice of claim regarding DOC not honoring his name change. ECF No. 24 at 12. Plaintiff alleges that Defendants failed to perform their mandatory duties under Wis. Stat. §§ 301.04, 302.04, 302.08 and this caused "irreparable harm to [his] rights." ECF No. 1-1 ¶ 50. Plaintiff responds to this argument by pointing to a statement in his complaint that alleges "each of state administrative remedy has been exhausted…to include filing of Notice of Claim." ECF No. 25 at 12.

The Court does not address the notice of claim line of argument and instead will dismiss any such claims because Plaintiff fails to state a claim for any Wisconsin statutory claims. In order to state a claim, the complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Here, Plaintiff's vague allegation that Defendants "failed to perform his (or her) mandatory duties, pursuant to Wis. Stat. §§ 301.04, 302.04, 302.08" are wholly insufficient to state a claim. Moreover, even with additional facts, it is not apparent that Wis. Stat. §§ 301.04, 302.04, 302.08 provide a private right of action for Plaintiff to bring claims against Defendants. In Wisconsin, "a private right of action is only created when (1) the language or the form of the statute evinces the legislature's intent to create a private right of action, and (2) the statute establishes private civil liability rather than merely providing for protection of the public." *Grube v. Daun*, 563 N.W.2d 523, 526 (Wis. 1997). As such, the Court will dismiss the state law claims for the failure to state a claim and finds that allowing amendment on these claims would be futile.

### 3.5 Criminal Conspiracy Claims

Defendants additionally argue that any criminal conspiracy claims should be dismissed because Plaintiff cannot bring a civil action to enforce a federal criminal statute. ECF No. 24 at 13. Plaintiff alleges all Defendants engaged in a criminal conspiracy to violate Title 18 U.S.C. § 242. ECF No. 1-1 ¶ 20. Plaintiff did not respond to this argument and therefore concedes it. *See Wojtas,* 477 F.3d at 926.

Even if Plaintiff had not conceded the issue, the Court agrees with Defendants and will grant their motion to dismiss on this claim. "'It is a truism' long recognized by federal courts 'that in our federal system crimes are always prosecuted by the Federal Government,' not by private complaints." *Dourlain v. Comm'r of Tax'n & Fin.,* 133 F. App'x 765, 767 (2d Cir. 2005) (quoting *Conn. Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 86–87 (2d Cir.1972)); *see also Witzlib v. Washington County*, No. 17-CV-1183-PP, 2020 WL 4753344, at *3 (E.D. Wis. Aug. 17, 2020). "To conclude otherwise, a party must show that Congress specifically intended to create a private right of action." *Dourlain,* 133 F. App'x at 767–68 (citing *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002)). Here, Plaintiff has not even attempted to demonstrate that Congress specifically intended private citizens to be able to sue under 18 U.S.C. § 242 or other provisions. As such, the Court will dismiss all federal criminal conspiracy claims.

### 3.6 Grievance Claims

Defendants next argue that any grievance claims involving inmate complaint SPF-2017-30767 should be dismissed. ECF No. 24 at 14. Plaintiff failed to respond to this argument and therefore concedes it. *See Wojtas,* 477 F.3d at 926.

Even if Plaintiff had not conceded the issue, the Court agrees with Defendants and will grant their motion to dismiss on this claim. Plaintiff alleges that Jess, Boughton, Facktor,[2] and O'Donnell accepted the inmate complaint examiner's dismissal of WSPF-2017-30767. ECF No. 1-1 ¶ 136. However, accepting an inmate complaint examiner's ruling on a grievance does not satisfy the personal involvement requirement; it does not cause or contribute to the violation. *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007). "A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *Id.* As such, any claims for accepting the dismissal of SPF-2017-30767 will be dismissed for the failure to state a claim.

### 3.7    Supervisory Liability Claims

Defendants also argue that Defendants Jess, Boughton, and Kartman, must be dismissed because Plaintiff alleges their liability only based on their alleged supervision of other named defendants.[3] ECF No. 24 at 14 (citing ECF No. 1-1 ¶¶ 14–15). Plaintiff did not respond to this argument and therefore concedes it. *See Wojtas*, 477 F.3d at 926.

Even if Plaintiff had not conceded the issue, the Court agrees with Defendants and will grant their motion to dismiss on this issue. Section 1983 does not allow actions against persons merely because of their supervisory roles. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010). Only a defendant who

---

[2]Defendant Facktor was previously dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). ECF No. 29.

[3]This argument previously applied to Defendants Huibregtse, Hines, Foster, Sweetney, Hermans, Winkleskicz, and Meli. However, these defendants were previously dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). ECF No. 29.

is personally responsible for depriving the plaintiff of a constitutional right may be held liable under § 1983. *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). The Court agrees that the allegations contained in ¶¶ 14–15 of the complaint do not plead any facts showing that Defendants Jess, Boughton, and Kartman were personally responsible for depriving Plaintiff of a constitutional right. To the extent that any other claims against any other defendants in the complaint rely solely on their position as a supervisor and not their personal involvement, these claims are dismissed as well for the failure to state a claim.

### 3.8 Department of Corrections

Finally, Defendants argue that the DOC should be dismissed because it is not a "person" subject to liability under 42 U.S.C. § 1983 and it is immune from suit under the Eleventh Amendment. ECF No. 24 at 6. Defendants note, and the Court agrees, that it is unclear which claims are specifically directed at the DOC. *Id.* Plaintiff argues generally that Defendants' argument regarding sovereign immunity constitutes a fraud. ECF No. 25 at 7.

As discussed above, the only claims allowed to proceed thus far are the federal constitutional claims under § 1983 that are not barred by the statute of limitations. The Court will accordingly dismiss the DOC because it is not a proper defendant for the purposes of § 1983. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983." *Johnson v. Supreme Court of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's Department of Corrections is a proper defendant." *Andreola v. Wisconsin*, 171 F. App'x 514, 515 (7th Cir. 2006). As such, the Court is obliged to dismiss the DOC as a defendant.

### 4. MOTION TO APPOINT COUNSEL

The Court will deny Plaintiff's motion for the appointment of counsel. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during her prosecution, who is paid by the government for the work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g., James,* 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa,* 893 F.3d at 1029 (same).

Additionally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt,* 503 F.3d at 655; *Jackson v. County of McLean,* 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose

Case 1:21-cv-01479-JPS   Filed 08/29/23   Page 19 of 30   Document 33

eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g., Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff has submitted some evidence that he contacted attorneys to represent him in the matter. ECF No. 31-1. Plaintiff includes several letters to attorneys seeking legal representation but does not include any responses. *Id.* The Court finds Plaintiff's efforts minimal at best as he has not shown evidence of contacting a civil rights attorney who may be able to actually take on his case. However, even assuming Plaintiff met the first prong, the Court would nonetheless deny the request based on the second prong as discussed below.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present

Case 1:21-cv-01479-JPS   Filed 08/29/23   Page 20 of 30   Document 33

it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of

cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference,

are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. In his motion, Plaintiff indicates that he has limited knowledge of the law, that he is indigent, and that this case is too complex to proceed without counsel. ECF No. 31.

It is true, as Plaintiff intuits, that a lawyer would be helpful in navigating the legal system; trained attorneys are of course better positioned to successfully litigate cases. But Plaintiff's lack of legal training brings him in line with practically every other prisoner or former prisoner litigating in this Court. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel.

Additionally, Plaintiff's current location outside of prison provides him with greater ability to fact-find and interview witnesses; confined prisoners typically have more difficulty with this aspect as their movement is necessarily restricted by imprisonment. Plaintiff may now have access to free online legal resources (at either a public library or community center), such as https://scholar.google/ which permits searches of federal case law, and to law libraries, including the one at the Milwaukee federal courthouse. Plaintiff may also seek limited assistance from the Eastern District of Wisconsin Bar Association Federal Legal Assistance Program. Plaintiff may start this process by completing the online form at https://edwba.org/form.php?form_id=15.

As such, the Court finds that Plaintiff has not demonstrated that his case is exceptional to require counsel. Additionally, the Court believes Plaintiff has the capacity to conduct discovery, which is the only task currently before him. The Court will therefore deny Plaintiff's motion, without prejudice, and if the case proceeds past summary judgment, the Court will reconsider any renewed motion for counsel at a later time.

5.      SANCTIONS AND JUDICIAL SUBSTITUTION

Plaintiff seeks sanctions against defense counsel in his response brief, ECF No. 25, and has also filed a motion to substitute judges based on judicial bias, ECF No. 32. The Court denies both requests.

As to sanctions against defense counsel, Plaintiff provides baseless allegations against counsel because rather than "man-up, and confess the constitutional substantial due process violations addressed within the context of the undersigned's sworn civil complaint. The defendant's legal counsel have attempted to influence[] the district court with fraudulent application of law." ECF No. 25 at 5. The Court will not waste its resources on this nonsensical argument. Defending one's clients and disagreement over the law is not sanctionable conduct, period. Plaintiff's right to bring the claims in this case is important. Equally important, however, is Defendants' right to defend themselves. As such, the Court denies Plaintiff's requests for sanctions.

As to substitution of judge, Plaintiff has already once made the same request, and the Court denied that motion because there was no basis for recusal. *See* ECF No 18. Plaintiff's new basis is that he disagrees with the Court's rulings thus far. *See* ECF No. 32. However, disagreement with a court's ruling is certainly not a basis for judicial recusal. "[O]pinions formed by a judge about a litigant based on events occurring during pending proceedings are rarely a valid basis for a claim of bias or prejudice." *Mohammed v. Anderson*, 833 F. App'x 651, 654 (7th Cir. 2020) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994) (explaining that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge"). In this context, a judge's recusal is not required unless a ruling or opinion makes "'fair judgment impossible.'" *In re City of Milwaukee*, 788 F.3d 717, 722 (7th Cir. 2015). The Court does not doubt its ability to be fair and impartial adjudicating this case. As such, the Court will deny Plaintiff's motion for an order of substitution.

## 6. CONCLUSION

For the reasons explained above, the Court grants Defendants' renewed motion to dismiss in full. The Court denies Plaintiff's motion for sanctions, to appoint counsel, and for the substitution of judge.

Defense counsel has provided a thorough and helpful list of the claims that survive in the event that the Court granted the motion to dismiss in full. ECF No. 30. The Court has carefully reviewed the complaint and Defendants' submission, and generally agrees with Defendants regarding the claims that remain. The Court has intentionally included any claims against Doe defendants that are not barred by the statute of limitations. Plaintiff must identify the Doe defendants through discovery by **October 30, 2023** or the Court will dismiss those claims without further notice. For clarity going forward, the Court finds that the following claims remain:

**Claim One**: Buss declined to process forms on December 1, 2017, because they did not include the Plaintiff's incarcerated name. ECF No. 1-1 ¶ 137.

**Claim Two:** Kartman declined to process an internal correspondence on December 18, 2017, because it did not include the incarcerated name. *Id.* ¶ 138.

**Claim Three:** Beloungy, on January 30 – February 15, 2018, denied Plaintiff from filing a grievance based on cross-reference issue with Plaintiff's name." *Id.* ¶¶ 141–44.

**Claim Four:** Fredlund, on February 15, 2018, refused and returned Plaintiff's grievances unfiled. *Id.* ¶ 145.

**Claim Five:** Washetas,[4] on February 9, 2018, declined to process and provide notary service because of the legal name issue. *Id.* ¶ 146.

**Claim Six:** Jackson, on March 30, 2018, declined to process money disbursement form for legal postage to the courts and three legal loan application forms because Plaintiff's legal/religious name appeared on the forms. *Id.* ¶¶ 148, 151.

**Claim Seven:** Jackson, on April 2, 2018, indicated to Plaintiff that when filling out legal loan application or using legal loan funds he must include the name "John Casteel" *Id.* ¶ 156.

**Claim Eight**: Jackson, on April 3, 2018, declined to process three legal loan applications, and disbursement forms for legal postage because of the name provided. *Id.* ¶¶ 160–62.

**Claim Nine**: Webster, on March 30, 2018, declined to process an E-file request to the Western District Court, stating "Please resubmit your DOC-643 properly completed including your DOC name and no toothpaste." *Id.* ¶ 149.

**Claim Ten:** Webster, on April 2, 2018, responded to an interview request asking Plaintiff to use his appropriate DOC name, stating he could not find anyone named "Tayr Kilaab al Ghashiyah" on the WCI/DOC Locator. *Id.* ¶ 154.

**Claim Eleven:** Webster, on April 2, 2018, declined to process Plaintiff's law library request because his legal/religious name appeared on the forms. *Id.* ¶ 155.

---

[4]Plaintiff's complaint spells this defendant's name as "Walhetas." ECF No. 1-1 ¶ 146. Defendants' notice of appearance, however, lists an appearance for Defendant "Lynn Washetas." ECF No. 4. The Court will therefore use Defendants' spelling of the name. In the event these individuals are not the same person, the parties should notify the Court to address this issue going forward.

**Claim Twelve:** Webster, on April 2, 2018, declined to process E-file requests to the federal court because he could not find anyone named "Tayr Kilaab al Ghashiyah" on the WCI/DOC locator. *Id.* ¶ 157.

**Claim Thirteen:** Reisen, on April 2, 2018, declined to process formal grievance forms to the warden's office because Plaintiff did not use his DAI inmate name *Id.* ¶ 159.

**Claim Fourteen:** Gyr, on April 3, 2018: denied notary services stating, "I cannot read your DOC # nor find you in the system under that name. Please resubmit with a legible DOC # & your correct name for DOC." *Id.* ¶ 163.

**Claim Fifteen:** Reisen, on April 4, 2018, declined to process Plaintiff's formal grievance forms to the warden's office by stating, "Your correspondence is being returned to you since you failed to use your DAI inmate name per information received form the records office." *Id.* ¶ 164.

**Claim Sixteen:** Jane Doe, on January 30, 2017, declined to process Plaintiff's library material request because Plaintiff's dual names appeared on the forms. *Id.* ¶ 131.

**Claim Seventeen:** Jane Doe, on May 6, 2017, declined to process Plaintiff's library material request because Plaintiff's dual names appeared on the forms. *Id.* ¶ 132.

**Claim Eighteen:** Jane Doe, on May 21, 2017, declined to process Plaintiff's library material request because Plaintiff's dual names appeared on the forms. *Id.* ¶ 133.

Finally, although courts generally must permit civil plaintiffs at least one opportunity to amend their pleadings, the Court need not do so where the amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). Because no

amendment can overcome the issues identified in this Order, the Court finds it would therefore be futile to allow Plaintiff to amend the complaint. As such, the Court will issue a scheduling order in due course.

Accordingly,

**IT IS ORDERED** that Defendants' renewed motion to dismiss, ECF No. 23, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the following claims be and the same are hereby **DISMISSED with prejudice**: (1) all federal constitutional claims from before November 9, 2015 and from April 5, 2018 through November 9, 2018; (2) all RFRA claims; (3) all RLUIPA claims; (4) all state constitutional claims; (5) all state law claims; (6) all federal criminal conspiracy claims; (7) any claims for accepting the dismissal of SPF-2017-30767; (8) all claims that rely solely on a defendant's position as a supervisor and not their personal involvement; and (9) all claims against the Department of Corrections;

**IT IS FURTHER ORDERED** that Defendants Cathy Jess, Gary Boughton, James Schwochort, Yana Pusich, Ellen Ray, William Brown, Ms. Kennedy, Mr. Thomas, Tonia Moon, Jailor Leffler, Jailor Morris, Jailor Hulce, Jailor McDaniel, and the Department of Corrections be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Plaintiff's request for sanctions against defense counsel, ECF No. 25, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 31, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for substitution of judge, ECF No. 32, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff must identify the Doe defendants on or before **October 30, 2023**; failure to identify the Doe defendants by this deadline will result in the dismissal of any claims against them without further notice.

Dated at Milwaukee, Wisconsin, this 29th day of August, 2023.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge